IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER CEFALU, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 04-1718 |
| | ) |
| JO ANN B. BARNHART, | ) |
| Commissioner of Social Security, | ) Judge Thomas M. Hardiman |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

I.   Introduction

Plaintiff Peter Cefalu, Jr. (Cefalu) brings this action pursuant to 42 U.S.C. §405(g) and §1383(c)(3) of the Social Security Act (Act), seeking review of the final determination of the Commissioner of Social Security (Commissioner) denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on the parties' cross motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure based on the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the memoranda of the parties, and the entire record, the Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's motion for summary judgment will be denied and the Commissioner's determination will be affirmed.

## II.     Procedural History

Plaintiff Cefalu first sought Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) and was denied in January 1994. (R. 13, 34, 74). Because he did not appeal, a finding of no disability prior to January 1994 is administratively final. *See* 20 C.F.R. §§404.905, 416.1405 (2004).

This appeal relates to Cefalu's application for DIB and SSI filed on March 15, 2000, in which he alleges disability as of March 21, 1993 because of recurrent herpetic keratitis and secondary glaucoma of the right eye as well as discogenic and degenerative disorders of the back. (R. 58-61, 74-76). The Commissioner denied the claim by letter dated June 14, 2000. (R. 62-65). Cefalu then requested an administrative hearing which was held on April 3, 2001, in Pittsburgh, Pennsylvania before Administrative Law Judge (ALJ) James J. Pileggi. (R. 27-57). Cefalu was represented by counsel and testified at the hearing. At the start of that hearing, Cefalu's counsel amended the onset date of his alleged disability to February 1, 1994 in light of his previously denied application. (R. 34-35).

In a decision dated June 29, 2001, the ALJ found that Cefalu was not disabled under the Act because he had the residual functional capacity (RFC) to perform a full range of light work prior to the date his insured status expired for DIB.[1] (R. 13-20). The ALJ also found that Cefalu was not disabled with respect to his SSI claim because he had the RFC to perform a full range of

---

[1]  The Social Security Administration administers two programs that provide disability benefits: the DIB program and the SSI program. The DIB program provides for payment of disability benefits to individuals who are "insured" by way of their earnings covered under social security. 20 C.F.R. §§ 404.110, 404.315 (2004). Thus, to receive DIB the claimant must show that he was disabled on or before the date he was last insured. 20 C.F.R. §§ 404.101(a), 404.131(a) (2004), *see also Matullo v. Bowen,* 926 F.2d 240, 244 (3d Cir. 1990). Based on Plaintiff Cefalu's earnings, December 31, 1995 is the last day that he was qualified to be "insured." Accordingly, Cefalu would have to show that he suffered a disability between February 1, 1994 and December 31, 1995 to receive DIB.

2

sedentary work as of the date of his application.[2] (R. 13-20). The ALJ's decision became the final decision of the Commissioner when the Appeals Council indicated that the next appeal available in Cefalu's case would be federal court review of the ALJ's decision.[3] (R. 10-12).

On August 30, 2001 Cefalu mistakenly filed a *pro se* appeal of the ALJ's decision with the Appeals Council. (R. 9). On March 8, 2002 the Appeals Council informed him that his appeal had been improperly filed and dismissed it for lack of jurisdiction. (R. 7-8). The Appeals Council also informed Cefalu that the erroneously filed request would be treated as a timely notice of intent to file a civil action with respect to the ALJ's decision and granted him an additional 60 days to file his civil action. Cefalu then retained Karl E. Osterhout, Esq., who requested a copy of the record to prepare an appeal. (R. 6A, 6B). Osterhout obtained another 60 day extension from the Appeals Council and the present appeal was then timely filed. (R. 5).

### III.  Statement of Facts

Plaintiff Cefalu was born on October 5, 1955 and was 45 years old at the time of the ALJ's decision, making him a "younger individual" under the regulations. 20 C.F.R. §404.1563(c). Cefalu has a seventh grade education and prior work experience as an automobile mechanic, construction worker, and truck driver. (R. 34, 38-40). He is single and lives with his 82 year-old father. (R. 36, 49). Cefalu has no income and relies upon the financial support of his father and girlfriend. (R. 36). He also testified that he stopped working on a regular basis on February 1, 1994 because of medical conditions. (R. 14). Although Cefalu testified that he

---

[2]  The Social Security Administration's SSI program requires only that the claimant be deemed disabled at the time that his application for disability is filed. Plaintiff Cefalu filed for disability on March 15, 2000.

[3]  This case was randomly chosen as part of a simplified administrative appeals process where the claimant was permitted to seek federal court review of the ALJ's decision without first seeking Appeals Council review.

attended the Office of Vocational Rehabilitation (OVR) in 1994 and worked two months as an auto mechanic, the record does not reflect any earnings for this period. Therefore, February 1, 1994 is the date of his last employment. (R. 77-79). Cefalu's earning record reveals that he acquired sufficient quarters to remain insured only through December 31, 1995. (R. 13).

In his application, Cefalu claims only physical impairments related to his eye and back injuries. (R. 58-62, 84-91). Similarly, during the hearing Cefalu claimed only physical impairments. *See* R. 41-50 (describing back problems); R. 51-53 (describing eye problems). Neither he nor his attorney at any time made reference to non-exertional or mental impairments. Indeed, Cefalu testified that he did not have any mental or emotional conditions for which he sought treatment. (R. 40). Nevertheless, Cefalu does not appeal the ALJ's decision regarding his physical impairments. Instead, he claims the ALJ erred in failing to discuss evidence of severe non-exertional impairments. *See* Pl. Br. at 6-11.

In support of his claim of a severe non-exertional impairment, Cefalu relies on an April 1, 1994 psychological report completed by licensed psychologist John R. Erbel, M.S.Ed., to whom Cefalu was referred by his vocational counselor. (R. 136). Ironically, in the report upon which he exclusively relies, Cefalu denied any mental or emotional disabilities and stated that his disability is a result of a virus in his right eye and he expressed a desire to become a truck driver or an automotive technician. (R. 137).

Cefalu arrived for his appointment with Mr. Erbel an hour early, was unaccompanied, and evidenced no anomalies of gait, speech or hearing but noted that he wears eyeglasses for light sensitivity because of the virus in his right eye. (R. 137). Cognitively, Cefalu functioned in the average to low average range of intelligence as characterized by his verbal expressive and receptive skills. His ability to follow directions and his general demeanor were good. (R. 137).

Erbel observed Cefalu to be oriented x3 and he was free of delusions, hallucinations, and ideas of reference. (R. 137). Cefalu conducted himself appropriately and was cooperative and polite throughout the testing and demonstrated good grooming and hygiene. (R. 137). He had good recall of both recent and remote events. (R. 137).

Testing revealed that Cefalu had a full-scale IQ of 91, which placed him within the lower end of the average range of intelligence. (R. 138). Moreover, he demonstrated average abilities to think abstractly, form appropriate conceptualizations, attend to auditory input, and recall recent events. (R. 138). Cefalu's spelling, word recognition, and arithmetic skills were below expectancy and a learning disability regarding spelling was identified. (R. 139).

Vocational testing revealed that Cefalu possesses adequate aptitude for four of the fourteen areas measured by the Career Ability Placement Survey. (R. 141). Based on that test, Cefalu was most suited for an occupation in the outdoor field. (R. 139). The California Occupational Preference System indicated that the best fit between Cefalu's aptitudes and interests was the skilled technology field and secondarily the outdoor or consumer economics field. (R. 139-140). Two additional achievement tests indicated that Cefalu possessed adequate academic abilities for competitive employment and limited post-secondary training. (R. 139).

## IV.   Standards of Review

Judicial review of the Commissioner's final decision on disability claims is provided by 42 U.S.C. §§ 405(g)[4] and 1383(c)(3).[5] Section 405(g) permits a district court to review

---

[4] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the

transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II are pertinent to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990).

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, *as a whole*, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir. 2004). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Jones,* 364 F.3d at 503, *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent*

---

plaintiff resides, or has his principal place of business . . . .

[5] Section 1383(c)(3) provides in pertinent part:
  The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.

6

*v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings. *Stewart*, 714 F.2d at 290. In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set her own expertise against

that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A). When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied .... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work ....
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant

8

> numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A). In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

9

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523, Multiple impairments, provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why

a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett,* 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson,* 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker,* 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security,* 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c) (2002). *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in the decision. *See Cotter,* 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion

11

and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. Although "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at 1070-71, *quoted in Mason*, 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37; *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

## V.   Discussion

Cefalu argues on appeal that the ALJ erred because he did not discuss evidence of record that Cefalu has mental limitations which affect his ability to work. According to Cefalu, had the ALJ discussed this evidence, he would have found that Cefalu suffers from a severe mental

impairment which in turn would have required a VE to determine whether jobs exist in the national economy that Cefalu is capable of performing. Cefalu asserts that the ALJ's failure to discuss his mental impairment and obtain the requisite VE testimony requires that the case be remanded for lack of substantial evidence. For the reasons that follow, the Court disagrees.

In his application for DIB and SSI, Cefalu never alleged that he had any non-exertional (mental) impairment that would hinder his ability to work. Instead, his claims involved physical impairments including eye and back problems. (R. 58-62, 84-91). Moreover, Cefalu did not raise any non-exertional limitations before the ALJ and he testified at the hearing that he has never received any treatment from a mental health professional. (R. 40). Thus, Cefalu now claims for the first time on appeal that he is disabled because of non-exertional impairments.

A claimant must show that he has a medically determinable physical or mental impairment and that it is so severe as to prevent him from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A); 1382c(a)(3)(A), (B); *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990). A "severe" mental impairment is defined under the Social Security Act as an impairment that significantly limits a claimant's ability to do basic work activities, including understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1520(c), 404.1521(b). Cefalu offers no evidence that he possesses mental impairments that affect his ability to perform these "basic work activities" other than the 1994 psychological evaluation performed by licensed psychologist John Erbel. Although Mr. Erbel's report is part of the record, Cefalu neither cited it during the ALJ hearing nor explains how the information contained therein impairs his ability to perform basic work functions. Instead,

13

Cefalu makes a technical argument, *viz.*, that the ALJ's failure to mention the Erbel report requires that the case be remanded to the ALJ. This argument is foreclosed by the Third Circuit's recent decision in *Rutherford v. Barnhart*, 399 F.3d 546 (3d. Cir. 2005).

In *Rutherford*, the claimant argued that the ALJ erred by not considering her obesity, which was apparent in the medical record before the ALJ. Following the decision of the Court of Appeals for the Seventh Circuit in *Skarbek v. Barnhart*, 390 F.3d 500 (7th Cir. 2004), the Third Circuit held that remand was not required because it would not affect the outcome of the case. *Rutherford*, 399 F.3d at 553. Like *Rutherford*, here Cefalu "never mentioned [mental impairment] as a condition that contributed to [his] inability to work, even when asked directly by the ALJ to describe [his] impairments." *Id.*

The recent decision of the U. S. District Court for the Eastern District of Pennsylvania in *Demiranda v. Barnhart*, 2005 U.S. Dist. LEXIS 13196 (E.D.Pa. July 5, 2005) demonstrates why remand is inappropriate here. In *Demiranda*, Judge Reed distinguished *Rutherford* because he could not say that the ALJ's consideration of the claimant's obesity would not have affected the outcome of the case. *Id.* at *3. Significantly, Demiranda was diagnosed with morbid obesity by several doctors. In addition, she alleged that her obesity affected her ability to work for several specific reasons. *Id.* at *3-4. "Finally, and most importantly, several medical records indicate that Demiranda's obesity contributed to her limitations . . . ." *Id.* at *4. Because the instant case is devoid of the facts present in *Demiranda*, this case is squarely within the ambit of *Rutherford*.

Furthermore, the record below belies the notion that Cefalu's RFC is adversely impacted by any non-exertional impairment. Cefalu testified at the hearing that he has not received any mental health treatment from a mental health professional such as a psychiatrist, psychologist, or mental therapist. (R. 40). Moreover, during the 1994 examination upon which he relies

exclusively, Cefalu denied any emotional or mental disabilities. (R. 137). Therefore, the ALJ's finding that Cefalu does not possess a severe mental impairment is supported by substantial evidence.

In sum, Cefalu failed to allege a mental impairment, he made no attempt to show that he has a severe mental impairment, he admitted in 1994 that he had no mental impairment, and he testified to the ALJ that he has no mental impairment. Accordingly, substantial evidence exists to support the conclusion that Cefalu does not in fact suffer from a severe mental impairment. The ALJ's decision must be affirmed.[6]

## VI.   Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that his ruling is supported by substantial evidence. Accordingly, the Court will deny Plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

September 6, 2005

　　　　　　　　　　　　　　　　　　　　　　　／s／ Thomas M. Hardiman
　　　　　　　　　　　　　　　　　　　　　　　Thomas M. Hardiman
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

cc:   counsel of record

---

[6] In light of the Court's ruling on the non-exertional issue, the ALJ's reliance on the grids was plainly proper. *See Santise v. Schweiker*, 676 F.2d 925, 938 (3d Cir. 1982); *Macera v. Barnhart*, 305 F. Supp.2d 410, 420-22 (D. Del. 2004).

15

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER CEFALU, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 04-1718 |
| ) | |
| JO ANN B. BARNHART, ) | |
| Commissioner of Social Security, ) | Judge Thomas M. Hardiman |
| ) | |
| Defendant. ) | |

### ORDER

AND NOW, this 6th day of September, 2005, in accordance with the foregoing memorandum opinion, it is HEREBY ORDERED as follows:

1. Defendant's Motion for Summary Judgment (Document No. 8) is GRANTED.

2. Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED.

3. The decision of the Commissioner is affirmed, and judgment is entered in favor of Defendant. The Clerk is directed to mark the case CLOSED.

*Thos M. Hardiman*
Thomas M. Hardiman
United States District Judge

cc: counsel of record as listed below

Karl E. Osterhout, Esq.
1789 S. Braddock Avenue
Suite 570
Pittsburgh, PA   15219

Jessica Smolar, AUSA
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219